United States District Court
Southern District of Texas
**ENTERED**
February 07, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Raymond Riles, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-20-1830 |
| | § | |
| Kilolo Kijakazi,[1] | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant*. | § | |

# MEMORANDUM AND RECOMMENDATION

Raymond Riles appeals the Social Security Administration (SSA) Commissioner's final decision denying his application for social security benefits. ECF No. 1. Pending before the court is Plaintiff's Motion for Summary Judgment, ECF No. 17, and Defendant's Motion for Summary Judgment, ECF No. 18. These motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Having considered the motions, administrative record, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

---

[1] Kilolo Kijakazi is Acting Commissioner of the SSA and is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g).

## 1. Background and Procedural Posture

Riles applied for supplemental security income (SSI) on August 7, 2017. Tr. 36, 91, 101, 103, 112. Riles claimed that he became disabled on August 7, 2017, due to post-traumatic stress disorder, back problems, high blood pressure, and asthma. Tr. 36, 66, 102–03, 227. Riles was born on April 26, 1969, and was forty-eight years old on the alleged disability onset date. Tr. 91, 101–102, 112, 227. Riles did not complete high school but later earned a high school equivalency certificate. Tr. 36, 71, 274. Prior to filing for disability benefits, Riles performed various jobs, including demolition cleanup and other general labor work, but none at the level of substantial gainful activity. Tr. 37, 82, 293.

The SSA denied Riles's application on December 19, 2017. Tr. 99, 101. Riles sought reconsideration on February 6, 2018. Tr. 123–24. The application was again denied on April 16, 2018. Tr. 111–12. Riles requested a hearing, and Administrative Law Judge (ALJ) Helen Francine Strong held a hearing on February 14, 2019, in Houston, Texas. Tr. 32–90, 130–31.

At the hearing, the ALJ heard testimony from Riles, a physical medical expert, a psychological medical expert, and a vocational expert (VE). Tr. 32–90. Riles was represented by an attorney. Tr. 32. Before the hearing began, Riles's attorney confirmed that the record was complete. Tr. 35.

The physical medical expert, John Anigbogu, M.D., testified without objection and characterized the records as showing that Riles had "a long-standing history of low back pain." Tr. 41. Dr. Anigbogu discussed the findings of magnetic resonance imaging (MRI) taken in 2004 and 2008 that showed a medically determinable back impairment that was treated with two sets of caudal epidural steroid injections. *Id.* Dr. Anigbogu testified that the medical records from 2009 and beyond did not mention back pain at all. *Id.* He testified that the only medical assessment and treatment of the back impairment was many years in the past with no evidence of more recent diagnostic imaging or treatment. Tr. 48.

Riles's attorney cross-examined Dr. Anigbogu at length about the diagnostic testing and treatment prior to 2009 and the possibility of continuing back pain. *See* Tr. 44–59. Dr. Anigbogu agreed that the medical evidence from years earlier showed the medically determinable impairments that could, but not necessarily would, cause pain. *Id.* Dr. Anigbogu did not agree, however, to assume that Riles currently was experiencing any back pain or needed any treatment because the medical record was devoid of any suggestion that was the case. *See id.* Riles's attorney challenged Dr. Anigbogu on why "[a]ll of those MRIs [were] not sufficient . . . to find a severe impairment to the lumbar spine[.]" Tr. 57. Dr. Anigbogu responded that back impairments can improve and that, "since 2009, there is really no evidence that [Riles] has been treated . . . for back problems[,]" which indicated

3

to the doctor that Riles's back has gotten better. Tr. 57–58. Dr. Anigbogu also noted that, not only were there no treatment records for his back in recent years, but Riles had attended many hospital visits for chest pain and had not reported experiencing back pain. Tr. 58.

Dr. Anigbogu opined that Riles's physical impairments did not individually or in combination meet or equal a listed impairment in appendix 1 (Listing). Tr. 42–43; *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2017). Dr. Anigbogu found that the medical record did not support any physical limitations other than environmental limitations and that Riles could perform work at all exertional levels. Tr. 43.

The VE confirmed that Riles had no prior relevant work that amounted to substantial gainful activity. Tr. 82. The ALJ asked the VE what work a hypothetical individual of the same age, education, and vocational history as Riles could perform if capable of performing work at all exertional levels without any postural, manipulative, visual or communicative limitations and with the following residual functional capacity (RFC):

> Environmentally, this person must avoid working in areas with concentrated exposure to extreme heat, extreme cold, as well as fumes, odors, dust, gases or work in areas with poor ventilation. As far as mental or psychological limitations are concerned, this person can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, and respond appropriately to changes in a routine work setting. This person will work best in an environment with no more than occasional contact with coworkers, supervisors, and the general public. And interactions with

4

coworkers on the job should not require teamwork. In addition, this person is unable to perform work at an assembly-line pace.

Tr. 82–83.

The VE testified that such an individual would be able to perform the jobs of hospital dietary aid, dining room attendant, and automobile porter—all medium, unskilled positions. Tr. 83–84. In response to the ALJ's questions, the VE identified three jobs each at the unskilled, light and sedentary levels that the hypothetical individual with the above RFC could perform. Tr. 84–86. The ALJ proposed a fourth hypothetical in which the person would be "unable to perform full-time permanent work on a regular, consistent basis" and "unable to sustain sufficient concentration, persistence, and pace to perform even simple, repetitive tasks on a regular and consistent basis." Tr. 86–87. The VE testified that no work would be available for such an individual. Tr. 87. Riles's attorney cross-examined the VE. *Id.*

Before closing the hearing, the ALJ questioned Riles about portions of his August 2009 function report. Tr. 88–90. Relevant to the court's review, Riles testified that he did not have a prescription for the use of a cane. Tr. 89. Riles did not provide any testimony about back pain. *See* Tr. 88–90.

The ALJ issued her decision on April 29, 2019, finding that Riles was not disabled from August 7, 2017, the date of the application, through the date of the decision. Tr. 14–26. Riles filed a request for review of the ALJ's decision on May 30, 2019. Tr. 222. On February 27, 2020, the Appeals Council denied Riles's request

5

for review. Tr. 1–5. Riles timely filed a complaint and application to proceed in forma pauperis in federal court on April 24, 2020. *See Riles v. Saul*, H-20-mc-1164, ECF No. 1 (S.D. Tex. Apr. 24, 2020).

## 2. Legal Standards

The Social Security Act provides SSI to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. § 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); *see also* 20 C.F.R. § 416.920(a)(4) (2017). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 416.920(a)(4) (2017).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia*

*v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin,* 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.,* 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. Analysis of the ALJ's Determination
#### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i) (2017). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 416.920(b) (2017).

The ALJ properly found that Riles had not engaged in substantial gainful activity since the application date of August 7, 2017. Tr. 16.

## B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii) (2017) (citing 20 C.F.R. § 416.909 (2017)). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2017).

An impairment is *not* severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (emphasis omitted) *(quoting Loza v. Apfel,* 219 F.3d 378, 391 (5th Cir. 2000)) (stating word for word the standard articulated in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)); *see also* SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985) (stating that an impairment is not severe "when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"). The Fifth Circuit recently confirmed that the SSR 85-28 articulation comports with the *Stone* standard. *See Keel*, 986 F.3d at 556. If a person does not have a severe impairment, he is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c).

8

> The ALJ stated the step-two standard as:
>
> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

Tr. 15 (citing 20 C.F.R. § 416.922; SSR 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017); SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)).

The ALJ found that Riles had the following severe impairments: "dysthymic disorder, substance abuse disorder, anti-social personality disorder, and schizoaffective disorder psychotic disorder [sic]." Tr. 16. The ALJ was "persuaded by the medical expert's opinion that there [were] no established physical impairments because his opinion [was] supported by and consistent with the medical evidence of record." Tr. 19, 24.

The ALJ found Riles's history of low back pain, gastroesophageal reflux disease, hepatitis B, hypertension, chronic obstructive pulmonary disease, precordial chest pain, history of drug use, and obesity not to be severe impairments "in that they cause no more than minimally vocationally relevant limitations." Tr. 16–18. About low back pain, the ALJ acknowledged Riles's diagnoses of multi-level degenerative disc disease and spinal stenosis in 2003, his improvement in pain after

9

epidural steroid injections in 2004, and an MRI showing lumbar spinal stenosis in 2008 but noted, "[T]here is no recent evidence of back problems." Tr. 16–17.

Riles argues that the ALJ erred in finding that the back impairment was not severe. ECF No. 17 at 5. Riles first argues that the ALJ applied an incorrect severity standard. ECF No. 17 at 6. This is not so. The standard articulated by the ALJ, as quoted above, uses the language of both 20 C.F.R. § 416.922(a) and SSR 85-28. Later in the decision, the ALJ stated the SSR 85-28 standard in terms of what is a severe impairment rather than a nonsevere impairment, but the meaning is the same. *See* Tr. 17. Because the ALJ applied the correct standard, there was no error.

Riles argues that his back impairment is a severe impairment based on the medical evidence from 2003 to 2009, arguing that those records "clearly meet[] the di minimis standard required to find an impairment severe." ECF No. 17 at 8. Even if the court were to agree, the medical evidence about Riles's condition approximately eight years prior to his alleged onset date does not inform the analysis of Riles's disability status during the relevant period from August 7, 2017 to the date of the ALJ's decision.

Riles next argues that the ALJ improperly relied on the lack of any recent evidence of treatment and on Dr. Anigbogu's testimony. ECF No. 17 at 8. Riles argues that Dr. Anigbogu admitted on cross-examination that the record contained

no evidence that Riles's back impairment had improved since 2008.[2] *See* ECF 17 at 8. While accurate, Dr. Anigbogu also testified that the medical record lacked *any* evidence that Riles reported back pain to medical providers or sought treatment from 2009 to the date of the hearing. Tr. 41, 48. Dr. Anigbogu concluded that the medical records did not support a finding that Riles currently had any physical limitations. Tr. 43. Dr. Anigbogu's testimony is relevant evidence supported by credible medical findings. *See Salmond*, 892 F.3d 817. His testimony is thus substantial evidence in support of the ALJ's conclusion that Riles currently does not have a severe back impairment. *See id.*

Riles pointed to no recent medical evidence that his back impairment caused any current work-related limitations. The burden was on Riles to make that showing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (stating that the severity regulation does not shift the burden of proof and that the claimant has the burden at step two of showing "that he has a medically severe impairment or combination of impairments"); *cf.* 20 C.F.R. § 404.1512(a)(1) (2017) (stating that the claimant bears the burden of proving that he is disabled).

---

[2] The ALJ gave the attorney's line of questioning about the medical findings from 2003 to 2008 no weight or analysis because, among other reasons, the evidence was addressed to Riles's condition "well before the alleged onset date[.]" Tr. 20.

The ALJ acknowledged that she must consider all impairments, severe or not severe, in her RFC analysis. Tr. 16. That the ALJ considered Riles's back impairment in determining his RFC is illustrated by the ALJ's discussion of Riles's medical history of back issues, allegations of back pain, and Dr. Anigbogu's testimony addressed below. Because the ALJ continued beyond step two and considered all impairments in determining the RFC, any error made at step two did not prejudice Riles. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected."); *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001) ("This Court requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision.").

Riles next argues that the ALJ erred in failing to develop the record on Riles's back pain, stating that, "to the extent that the ALJ believed that the evidence of record was insufficient to show the current level of limitation due to [Riles's] back impairment, the proper action by the ALJ was to obtain a consultative examination that could clarify [Riles's] current level of limitations due to his back impairments." ECF No. 17 at 9.

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Brown v. Saul*, 858 F. App'x 711, 713 (5th Cir. 2021) (quoting *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001)). When an ALJ makes "an informed decision based on sufficient facts[,]'" the ALJ fulfills the duty to develop the record. *Id.* (quoting *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). Reversal of the ALJ's decision is proper only if the claimant shows that "he could and would have adduced evidence that might have altered the result." *Id.* (quoting *Brock*, 84 F.3d at 728). The mere assertion "that additional beneficial evidence might have been gathered . . . is insufficient" to show prejudice. *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012). The decision whether a consultative examination is needed is within the ALJ's discretion and is required only if it is necessary to enable the ALJ to make the disability decision. *Brown*, 858 F. App'x at 713.

Nothing suggests that the ALJ found the record evidence insufficient to show Riles's current level of limitation from his back impairment. The ALJ considered Riles's subjective testimony about his back and found that it did not indicate that he had severe impairment. Moreover, both Riles's attorney and the ALJ considered the record to be complete. *See* Tr. 14, 35. Riles's attorney did not request a consultative examination. *See* Tr. 35. The ALJ properly determined that the evidence was

13

sufficient to make an informed decision and did not err in not ordering a consultative examination.

As to prejudice, Riles points to no evidence or testimony suggesting that a consultative report was necessary. Moreover, Riles does not state what evidence a consultative examination would have adduced or how it would have changed the outcome. Specifically, even if diagnostic tests showed a continuing back impairment, nothing in evidence suggests that a physical examination would reveal disabling limitations. Riles has not shown that he was prejudiced by the ALJ's failure to order a consultative examination.

**C. Step Three**

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a Listing section. 20 C.F.R. § 416.920(a)(4)(iii) (2017). If all the criteria of a Listing section are met or equaled, the claimant is considered disabled. 20 C.F.R. § 416.920(d) (2017); *Whitehead*, 820 F.3d at 780–81.

The ALJ found that Riles's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. Tr. 18. The ALJ appropriately considered Listing sections 12.03 (schizophrenia spectrum and other psychotic disorders) and 12.08 (personality and impulse-control disorders). Tr. 18–19.

The court's review of the record shows that substantial evidence supports the ALJ's step-three findings. Riles does not dispute these findings.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's RFC "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 416.920(e) (2017); *see Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. § 416.945(a)(1) (2017); SSR 96-8p, 1996 WL 374184, at *2–3, 5 (July 2, 1996). An RFC assessment is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. § 416.945(a)(1) (2017); SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

The RFC determination is an issue reserved to the Commissioner. 20 C.F.R. § 416.920b(c)(3) (2017); *see also Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) (stating that the RFC determination is "the sole responsibility of the ALJ."). The ALJ determined that Riles established no exertional, postural, manipulative,

visual, hearing, or communicative limitations and that he was able to perform work at all exertional levels. Tr. 19. The ALJ determined that Riles's RFC also included:

> [H]e must avoid working in areas with concentrated exposure to extreme heat, extreme cold, fumes, odors, dusts, gases, or work in areas with poor ventilation. He can understand, remember, and carry out simple instructions[,] make simple decisions; attend and concentrate for extended periods; and respond appropriately to changes in a routine work setting. He will work best in an environment with no more than occasional contact with co-workers, supervisors, and the general public. He cannot do work that requires interactions with co-workers on the job [that involve] teamwork. He is unable to perform work at an assembly line pace.

*Id.*; *see also* Tr. 83.

In determining Riles's physical RFC, the ALJ considered and discussed Riles's subjective complaints and 2009 function report, the medical evidence, the state agency administrative findings, and Dr. Anigbogu's hearing testimony. Tr. 19–21, 23–24. The ALJ questioned Riles at the hearing about portions of the 2009 function report and discussed the limitations he reported. Tr. 20, 88–89, 265–67. About Riles's subjective complaints of pain, the ALJ stated:

> While the claimant alleges severe low back pain[,] factors for consideration in evaluating an individual's subjective complaints of pain include whether there is documentation of persistent significant limitations of range of motion, muscle spasm, muscular atrophy from lack of use, significant neurological deficits, weight loss or impairment of general nutrition, and non-alleviation of symptoms by medications. None of the claimant's examinations disclosed the above findings to any significant degree. Furthermore, there is no evidence that the claimant is taking any pain medications that are usually prescribed for individuals experiencing significant levels of pain.

Tr. 23; *see also* SSR 16-3p, 2017 WL 5180304, at 7–8 (revised Oct. 25, 2017) (listing factors the ALJ should consider in evaluating pain, including medication and other treatment). Moreover, as the ALJ noted in her decision, Riles engaged in strenuous work after the alleged onset date. Tr. 21, 37, 293.

Riles has not shown that he required more limitations than the ALJ included in the RFC.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs he previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(f) (2017); *see also Perez*, 415 F.3d at 462. If a claimant has no past relevant work, the ALJ considers the RFC and vocational factors to determine if a claimant can perform other work. 20 C.F.R. § 416.920(g)(1) (2017).

The ALJ appropriately determined that Riles had no past relevant work performed at the level of substantial gainful activity and proceeded to step five. Tr. 24, 37, 82; *see also* 20 C.F.R. § 416.920(g)(1).

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); *see also* 20 C.F.R. § 416.920(a)(4)(v) (2017). If the claimant

17

can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g)(1) (2017).

The ALJ found that Riles could perform jobs that exist in significant numbers in the national economy. Tr. 25–26. The ALJ relied on the hearing testimony of the VE that an individual of Riles's age, education, and RFC would be able to work as a hospital dietary aide, a dining room attendant, and an automobile porter. *Id.* The ALJ added that she disregarded the VE's testimony in response to the attorney's cross-examination about Riles's need for prompting because the record did not support that limitation. Tr. 25. Because the VE's testimony was based on a hypothetical question that incorporated all the limitations reasonably recognized by the ALJ and the Riles's attorney cross-examined the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination).

The court's review of the administrative record reveals that the ALJ employed the correct legal rules and that the findings at each of the five steps were supported by substantial evidence.

## 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on February 7, 2022.

Peter Bray
United States Magistrate Judge